IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES H. WITTMAN III, | No. C 02-02893 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| CALIFORNIA DEPARTMENT OF SOCIAL SERVICES DIRECTOR RITA SAENZ, et al., | |
| Defendants. | |

On October 14, 2005, the Court heard oral argument on plaintiff's motion for preliminary injunction and defendant Santa Clara County's motion for summary judgment. After the hearing, the Court ordered supplemental briefing regarding the "policy" or "custom" that plaintiff is challenging under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), as well as the question of plaintiff's entitlement to injunctive relief. The supplemental briefing is complete, and the Court hereby GRANTS in part and DENIES in part defendant's motion for summary judgment, and DENIES plaintiff's motion for a preliminary injunction.

**INTRODUCTION**

This case returns to the Court after remand from the Ninth Circuit. In an unpublished memorandum decision, the Ninth Circuit affirmed in part and reversed in part this Court's dismissal of plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Ninth Circuit held that plaintiff alleged sufficient facts to state a claim that the State and County individual defendants and agencies violated his First Amendment right to freely associate with his fiancee. *See* Order at 4.

The Ninth Circuit affirmed this Court's dismissal of plaintiff's claim for damages against the individual defendants, and remanded for a determination of whether plaintiff is entitled to injunctive relief against any of the State and County individual defendants and agencies. *Id.* at 9-10. The Ninth Circuit also remanded for a determination of whether plaintiff may seek damages and/or injunctive relief against the County under *Monell v. Department of Social Services of New York*. *Id.* at 10.

Presently before the Court are two motions. Plaintiff has filed a motion for a preliminary injunction, seeking an order prohibiting defendants from using "threats or intimidation about the loss of reunification services with children, or the loss of parental rights of a child, as a result of continued association with any other person." Plaintiff's Motion for Preliminary Injunction at 1.

Defendant has filed a motion for summary judgment on the two issues remaining after the Ninth Circuit's remand. First, defendant contends that plaintiff lacks standing to seek injunctive relief for his claim that defendants violated his First Amendment right to freely associate with his fiancee because he cannot demonstrate any real or imminent threat of irreparable injury. Defendant also contends that even if plaintiff has standing to seek injunctive relief, he cannot satisfy the requirements for injunctive relief because, *inter alia*, the requested injunctive relief would violate California law. Second, defendant contends that plaintiff cannot establish a claim under *Monell v. Department of Social Services of New York*, because plaintiff can neither establish that his alleged constitutional deprivation was caused by an unconstitutional policy, practice or custom, nor can he show that his alleged constitutional deprivation was caused by a failure to train County employees. [1]

---

[1] The pending motion for summary judgment was filed only by the County of Santa Clara, and asserts in its text that "there are only two remaining claims in this action, which are solely against the County of Santa Clara." Memorandum of Points and Authorities in Support of Defendant County of Santa Clara's Motion for Summary Judgment, at 1. However, the Ninth Circuit memorandum decision at page 10 quite clearly "remand[s] to the district court so that it can determine whether Wittman is entitled to injunctive relief against any of the State and County individual defendants and agencies," and "whether Wittman may seek damages and/or injunctive relief against the County under a *Monell* theory." In December, 2004, after remand, the plaintiff by stipulation dismissed the State defendants, including the individual State defendants, but nothing in the file reflects dismissal of the individual County defendants. Thus, the question of injunctive relief against the individual County defendants is still open. It appears to the Court that the analysis of injunctive relief in this Order applies equally to the County and to the individual County defendants.

**BACKGROUND**

**1.     Factual history**

Prior to April 1999, Charles H. Wittman (hereinafter, "Wittman") was living with Kelley Lynn Tucker (hereinafter "Tucker")[2] and Tucker's four minor children, Daniel Chambers, Jason Chambers, Meagan Buckholtz, and India Mah (hereinafter known collectively as "the Mah children"), at Wittman's home. In April 1999, Meagan accused her brother, Jason, of sexually molesting her. Santa Clara Social Services subsequently removed the three oldest Mah children from Wittman's home. Juvenile dependency hearings were filed in Santa Clara County Juvenile Court. Kathleen Dudley was assigned as a social worker for the case.

Dudley, as per her duties as a county social worker, submitted several reports to the juvenile court concerning the Mah children and Wittman's interaction with them. As part of these dependency hearings, Wittman's application for *de facto* parent status was denied by the court. Complaint at 25:23-26:11. The state juvenile court denied Wittman standing in the dependency hearings for the Mah children. Complaint at 13:4-11.

On January 18, 2000, Wittman's application for a foster care license was denied based on allegations of violations of the False Claims Act, allegations of lack of care and supervision of children, and failure to submit fingerprints, health screening tests and T.B. tests for all adults living at Wittman's residence.

On July 28, 2000, another social worker assigned to the Mah children's case, Barbara Eddy, sent Mah a letter stating that she did not believe that Wittman was an appropriate role model for the Mah children, particularly because of the accusation that he had committed fraud in his application for a foster care license (hereinafter "the July 28, 2000 Eddy letter"). This letter further advised Mah that the Santa Clara County Department of Social Services would not reunify Mah with her children if Wittman would be living in the same home as Mah and the children.

---

[2] Ms. Tucker was previously known as Kelley Lynn Mah.

Much of Wittman's complaint[3] is devoted to allegations pertaining to his relationship with the Mah children and his exclusion from the dependency proceedings involving those children due to his lack of standing. The Ninth Circuit, however, affirmed this Court's order dismissing these claims because Wittman lacked standing to participate in the dependency proceedings or to challenge the juvenile court's determination that he was not entitled to de facto parent status.

Wittman's allegations that defendants violated his right to freely associate with Tucker are as follows:

- Defendants state that [Tucker] uses Wittman's van, eats his food and lives in his house to paint a picture of [Tucker]'s dependency on Wittman in a conspiracy to deny Wittman his right to freely associate with persons he chooses. Defendants have denied Wittman of his constitutionally protected right of association under the First Amendment. Complaint at ¶ 46.2.

- Defendants recommend no contact of Wittman with the Mah children and that if [Tucker] continues contact with Wittman she will not be reunified with her children which is all based on false allegations and the with holding [sic] of exculpatory evidence under the color of authority. Defendants SS/CPS/DFCS et al own hired psychologist recommends that Wittman be offered services with counseling including the children as he could see the benefit. This report was denied in a conspiratorial action to deny Wittman of his right to association and familial rights with [Tucker] and her children. . . . *Id.* at ¶ 46.3.

Wittman alleges that "[d]efendants' wrongful and unlawful conduct . . . was undertaken, in whole or in part, pursuant to an official policy of the Social Services Agency of Santa Clara County and/or its departments of DFCS and/or CPS and California Department of Social Services (CDSS)." *Id.* at ¶ 62. Wittman further alleges that:

Pursuant to this policy, DFCS and CPS employees are encouraged, trained, and/or directed to seize children immediately from their parents' custody, to make false allegations against anyone who might be involved in the childrens [sic] lives, deny children and parents/friends the right to association or familial rights and in the absence of exigent circumstances of imminent physical harm, or were otherwise not trained, or not trained sufficiently, in the contours of the federal and state laws protecting citizens such as Plaintiff.

*Id.* at ¶ 62.

**2.    Procedural history**

---

[3] Plaintiff has never amended his complaint, and thus the operative complaint is the same complaint reviewed on appeal.

4

On October 30, 2001, Wittman filed a complaint (hereinafter "Complaint") against twenty-nine state and local government employees and agencies. Wittman alleged five separate causes of action: (1) against all defendants for violation of his civil rights under 42 U.S.C. §§ 1983, 1985 and 1987; (2) against all defendants for intentional infliction of emotional distress; (3) against all defendants for negligent infliction of emotional distress and physical harm; (4) against defendants Department of Social Services and California Department of Social Services for declaratory and injunctive relief for violation of Wittman's constitutional rights; and (5) against defendants Rita Saenz, California Department of Social Services, the County of Santa Clara, County of Santa Clara Board of Supervisors, each Board of Supervisors member individually, Will Lightborne, Yolanda Rinaldo and Leroy Martin, individually and in their official capacity, for violations of Wittman's civil rights. Wittman seeks an injunction against defendants in their respective capacities and the award of more than three hundred and fifty million dollars ($350,000,000.00) in compensatory and punitive damages. *See* Complaint at 35:8-65:5.

By orders filed February 11, 2002, October 22, 2002, and March 11, 2003, the Court dismissed Wittman's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Wittman appealed these orders to the Ninth Circuit. On September 7, 2004, the Ninth Circuit issued an unpublished memorandum decision in which it concluded that "Wittman alleged sufficient facts to state a claim that the individual defendants violated his First Amendment right to freely associate with his fiancé." The Ninth Circuit remanded the issue of whether Wittman was entitled to injunctive relief against any of the State and County individual defendants and agencies. The Ninth Circuit also remanded for a determination of whether Wittman may seek damages and/or injunctive relief against the County under *Monell v. Department of Social Services of New York*.

**LEGAL STANDARD**

**1.    Summary judgment**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**2.      Preliminary injunction**

The Court has the authority to grant a preliminary injunction in the exercise of its equitable powers. *See* Fed. R. Civ. P. 65. As the Court is acting in equity, the decision to enter a preliminary injunction is largely left to its discretion. *See Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 868 F.2d 1085, 1087 (9th Cir. 1989). Traditionally, this rule has been interpreted to require the trial court to consider the likelihood that plaintiff will prevail on the merits *and* the possible harm to the parties from granting or denying the injunctive relief. *See Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

At the extremes, the party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, *or* (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988); *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987). "These are not two distinct tests, but rather the opposite

1  ends of a single 'continuum in which the required showing of harm varies inversely with the required
2  showing of meritoriousness.'" *Miss World*, 856 F.2d at 1448 (quoting *Rodeo Collection*, 812 F.2d at
3  1217). However, in any situation, the Court must find that there is some threat of an immediate
4  irreparable injury, even if that injury is not of great magnitude. *See Big Country*, 868 F.2d at 1088
5  (citing cases); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985)
6  (citing cases).

**DISCUSSION**

**1.    Injunctive relief**

Plaintiff's motion for preliminary injunction seeks an injunction "prohibiting the practice of requiring consenting adults to not associate with each other, inclusive of married couples, joint parents of a child or children, and other adults, one or more of whom has a child in the custody, care, and control of the Santa Clara County Department of Social Services, and the Department of Family & Children's Services." Motion for Preliminary Injunction at 1. Plaintiff also seeks an order "prohibiting the use of threats or intimidation about loss of reunification services with children, or the loss of parental rights of a child[ren], as a result of continued association with any other person," and "prohibiting acts of retaliation against each person/party who has sworn out a declaration about these policies and practices, and have been brave enough to submit their declaration for use in support of this motion." *Id.*

Plaintiff contends that he is entitled to such relief based upon the evidence he has submitted showing that defendants illegally interfered with his constitutional right to associate with Ms. Tucker. Plaintiff has submitted several declarations from Ms. Tucker, including the Additional Affidavit of Kelley Lynn Tucker, filed on October 11, 2005, which contains a detailed time line of events which plaintiff contends shows that defendants have denied plaintiff his associational rights with Ms. Tucker. These declarations, and the time line in particular, describe alleged actions taken by defendants to interfere with plaintiff's associational rights with Ms. Tucker through January 2001. *See, e.g.,* Supplemental Tucker Decl. at 7. Plaintiff has also submitted a copy of the July 28, 2000 Eddy letter, as well as numerous declarations from individuals which purportedly detail the declarants' knowledge

7

of the July 28, 2000 letter and "the harm caused by Eddy's actions which includes the forcing of Ms. Tucker to move and not associate with Mr. Wittman." Wittman Decl. at 3 (Declarations of Sharon Wright, Annie Jones, Sharon Snyder, William Tucker).

Defendant contends that plaintiff lacks standing to seek injunctive relief because he cannot show that he is in imminent risk of the deprivation of his associational rights with Ms. Tucker. Defendant has submitted evidence showing that the dependency cases of all four of Tucker's children have been dismissed. *See* Defendant's Request for Judicial Notice, Ex. A-D. Daniel Chambers' dependency case was closed on July 12, 2004 because he reached the age of majority. *Id.* at Ex. C1. Jason Chambers' dependency case was closed on June 2, 2005, also because he reached the age of majority. *Id.* at Ex. D1. Meagan Buckholtz's dependency case was closed on October 24, 2001, and custody was awarded to Michael Buckholtz, who resides in Georgia. *Id.* at Ex. B1. Ms. Tucker is allowed to visit Meagan under an agreement with the father under his supervision. *Id.* India Mah's dependency case was closed on May 21, 2003 because India was adopted; Ms. Tucker's parental rights were terminated as a result of the adoption. *Id.* at Ex. A1.

Defendant has also submitted deposition testimony from Ms. Tucker, taken on May 31, 2005, in which she states that her current ability to marry Wittman is not affected by any proceedings related to Daniel, Jason or India. Rossi Decl., Ex. A at 55:12-56:17. Ms. Tucker stated that she believes DFCS could open another dependency case regarding Meagan if she married plaintiff because Meagan is still a minor. *Id.* at 55:20-56:13. Ms. Tucker also stated that she intends to file proceedings in Georgia to regain custody of Meagan, but that she was unsure when she would do that. *Id.* At the time of her deposition, although Ms. Tucker was still involved with plaintiff, she was not married to him nor was she residing with him. *Id.* at 8:3-16; 37:9-38:24.

Although defendant frame its arguments in terms of standing, plaintiff's entitlement to injunctive relief for his claim that defendants violated his First Amendment right to freely associate with Ms. Tucker raises questions of both standing and mootness. Standing is determined by the facts that exist at the time the complaint is filed, whereas mootness looks at events that occur after the complaint is filed. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). Both doctrines are concerned with whether there is an actual case or controversy that is suitable for adjudication. *Id.*

### A.     Daniel Chambers, Jason Chambers and India Mah

Since the complaint was filed, the dependency cases of Daniel, Jason and India have been closed because Daniel and Jason reached the age of majority and India was adopted. Thus, defendants are not now, and cannot ever be, involved in any dependency proceedings regarding Daniel, Jason or India. Accordingly, the Court concludes that plaintiff's claim for injunctive relief regarding his First Amendment claim of right of association with Ms. Tucker, insofar as that claim was predicated on DFCS' involvement in dependency proceedings for Daniel, Jason or India, has become moot. *See Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510-11 (9th Cir. 1994) (affirming dismissal of claim for prospective relief as moot because statute at issue was repealed).

Plaintiff contends that he has standing to seek injunctive relief and that this claim is not moot because DFCS harmed plaintiff by unlawfully and vindictively interfering with his constitutional rights, and that defendants' actions have caused plaintiff lasting harm, including harm resulting from being separated from his fiancee. However, the fact that plaintiff feels harm today from events in the past does not mean that he is entitled to prospective injunctive relief. Instead, for purposes of standing and mootness, plaintiff must establish a present real or immediate threat of irreparable injury; if a plaintiff cannot show that he will be harmed by any future conduct on the defendant's part, he is not entitled to injunctive relief. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004) (holding plaintiff lacked Article III standing for injunctive relief because plaintiff lacked current contractual relationship with defendant and therefore was not personally threatened by any conduct).

### B.     Meagan Buckholtz

The Santa Clara County Superior Court terminated Meagan's dependency case on October 24, 2001, prior to the filing of the complaint on October 30, 2001. The termination order awards physical and legal custody of Meagan to her father, Michael Buckholtz, and the order states that "the juvenile court has terminated jurisdiction over [Meagan], requests for any modification of these orders must be brought in the family court case in which these orders are filed." Request for Judicial Notice, Ex. B1. According to plaintiff, Meagan has been living with her father in Georgia, and she is currently under

9

the jurisdiction of the Bibb County, Georgia juvenile court.[4]

"Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1100 (9th Cir. 2000) (internal quotations and citations omitted). The Court concludes that, at this time, plaintiff lacks standing to pursue injunctive relief regarding his associational claim insofar as it depends on Meagan's situation. As an initial matter, the Court notes that plaintiff acknowledges that Meagan is currently under the jurisdiction of the juvenile court in Georgia. *See* Plaintiff's Supplemental Brief at 13. Plaintiff contends that DFCS *could* become involved in Meagan's case *if* Ms. Tucker were able to regain custody of her daughter and brought Meagan back to California. However, the possibility of Ms. Tucker regaining custody of her daughter is, at the present, purely speculative. The hypothetical possibility that DFCS could, at some future date, become involved in Meagan's situation is insufficient to confer standing.

Moreover, even if Ms. Tucker regained custody of Meagan and brought her to California, the California court that would have jurisdiction over Meagan is the family court division of the superior court, not the juvenile division. *See* Cal. Welf. & Inst. Code § 362.4; *cf. In re Michael B.*, 8 Cal. App. 4th 1698 (1992) (holding after juvenile court properly terminates jurisdiction over minor and transfers custody to family court, parties may seek relief or modification of that order in family court). In addition, the California family court would have jurisdiction over Meagan only if the Georgia courts first relinquished jurisdiction over Meagan's case. *See* Cal. Fam. Code § 3421(a)(1)-(2). Defendant states that DFCS is not involved in the family division of the superior court, nor will DFCS be involved in any potential future proceedings concerning Meagan. *See* Defendant's Supplemental Brief at 11-12.

Plaintiff's reliance on the Interstate Compact for the Placement of Children ("ICPC"), Cal.

---

[4] Plaintiff's supplemental brief and "emergency" request, along with the December 7, 2005 affidavits of Kelley Lynn Tucker and Sheran Fay Snider, state that in November 2005, authorities in Bibb County, Georgia, took Meagan into protective custody due to alleged sexual, physical and mental abuse by her father. Plaintiff's supplemental brief states that Ms. Tucker "has traveled to Georgia to be with her daughter and expects to have her child placed with her there before she and Meagan can then be transferred to California under the Interstate Compact for the Placement of Children." Plaintiff's Supplemental Brief at 13. It is unclear from plaintiff's papers whether Ms. Tucker has initiated any proceedings to regain custody of Meagan.

10

Family Code §§ 3400 *et seq.*, is unavailing. Plaintiff contends, without legal or evidentiary support, that Meagan was placed in Georgia pursuant to the ICPC, that DFCS continues to have responsibility for Meagan under the ICPC, and that if Meagan is returned to California, Meagan will be in the care, custody and control of DFCS and its agents. However the ICPC only governs "sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption . . . ." Cal. Fam. Code § 7901 art.3, subd. (b). Here, Meagan's father was awarded physical and legal custody of her, and Meagan was not sent to Georgia for placement in foster care or as a preliminary to possible adoption. Moreover, "California courts have concluded the ICPC does not apply to placements with a dependent child's natural parent." *In re Emmanuel R.*, 94 Cal. App. 4th 452, 458 (2001). Accordingly, the ICPC does not appear to apply to this case.

Plaintiff has not submitted any evidence or cited any authority in support of his contention that defendants are now, or could imminently be, involved in proceedings related to Meagan. Assertions unsupported by evidence do not raise a triable issue of fact. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Because the Court concludes that plaintiff lacks standing to pursue injunctive relief, the Court does not reach defendant's argument that the injunctive relief sought would violate California law.

**2.      Plaintiff's claim under *Monell v. Department of Social Services of New York***

The Ninth Circuit remanded for a determination of whether plaintiff may maintain his action for damages and/or injunctive relief against the County under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that municipalities such as the County are "persons" within the meaning of 42 U.S.C. § 1983. *Monell* announced the following standard governing the liability of a municipality under § 1983:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may

11

1 be fairly said to be those of the municipality." *Board of the County Commissioners v. Brown*, 520 U.S.
2 397, 403-04 (1996) (quoting *Monell*). "Similarly, an act performed pursuant to a 'custom' that has not
3 been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability
4 on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (quoting
5 *Monell*). The *Monell* standard governs a county's liability under § 1983. *See McMillian v. Monroe*
6 *County*, 520 U.S. 781, 783 (1997); *Streit v. County of Los Angeles*, 236 F.3d 552, 564 (9th Cir. 2001).

7 The precise policy or custom that Wittman challenges under *Monell* has not been clearly or
8 consistently presented in Wittman's pleadings. Wittman's complaint alleges that defendants have an
9 "official policy" under which County social workers are trained "to seize children immediately from
10 their parents' custody, to make false allegations against anyone who might be involved in the childrens
11 lives, deny children and parents/friends the right to association or familial rights and in the absence of
12 exigent circumstances of imminent physical harm." Complaint at ¶ 62. However, plaintiff has not
13 identified an official policy or a decision by an authorized decisionmaker sanctioning unconstitutional
14 interference with parents' rights to associate with their significant others. *See Thompson v. City of Los*
15 *Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). Thus, plaintiff's *Monell* claim is more properly analyzed
16 as challenging a "custom."

17 In his summary judgment opposition papers, plaintiff contends that his *Monell* claim challenges
18 the County's "policy or custom" of improperly applying California Welfare & Institutions Code § 306,
19 which provides in pertinent part:

> (b) Before taking a minor into custody, a social worker shall consider whether the child can remain safely in his or her residence. The consideration of whether the child can remain safely at home shall include, but not be limited to, the following factors:
>
> (1) Whether there are any reasonable services available to the worker which, if provided to the minor's parent, guardian, caretaker, or to the minor, would eliminate the need to remove the minor from the custody of his or her parents, guardian, or caretaker,
>
> \* \* \* \*
>
> (3) Whether a non-offending caretaker can provide for and protect the child from abuse and neglect and whether the alleged perpetrator voluntarily agrees to withdraw from the residence, withdraws from the residence, and is likely to remain withdrawn from the residence.

27 Cal. Welf. & Inst. Code § 306(b). Wittman contends that the County's enforcement of this statute is
28 "subjective" and that "the County interprets the authority granted by WIC § 306(b) to allow a social

worker [to] tell parents that they cannot associate." Plaintiff's Objection to Defendant's Motion for Summary Judgment at 14. Wittman argues that defendants ignore the requirement in Section 306(b) that "before taking a minor into custody" a social worker must consider whether a child can remain in his or her residence.

At oral argument, and in response to the Court's questioning regarding exactly what "custom" Wittman is challenging, Wittman articulated a slightly different "custom" than is presented in his briefs or his complaint. Wittman stated that he does not contend that the County and its social workers do not have the authority to take children away from their parents and out of their residences if there is some person (another parent, boyfriend, girlfriend etc.) living in the residence who poses a danger to the children. Thus, the parties appear to be in agreement that under California Welfare and Institutions Code § 306(b), the County is permitted and indeed required to take steps that are in the best interest of the child, and those steps may require not returning a child to his or her parent's custody if there is someone residing with the parent who poses a threat to the child.

Instead, at oral argument Wittman contended that the County has a custom of permitting social workers to tell parents that they cannot associate in any way with the other parent, boyfriend, girlfriend etc., *even if that person is no longer living at the residence and has no contact with the children, and therefore is not a threat or danger to the children*. Thus, Wittman contends, the County has a custom of forbidding parents from communicating in any way with their significant others – such as talking on the telephone or exchanging letters – under threat of not reunifying parents with their children, even when the threat presented by the person has been removed (or is not present in the first place). Wittman contends that this custom unconstitutionally interferes with parents' rights to associate with other parents and significant others.

Wittman contends that the evidence he has submitted regarding the dependency proceedings of the Mah children, and of the "conspiracy" by defendants to separate plaintiff and Ms. Tucker, demonstrates that the County has a custom of forcing parents in the dependency system not to associate with their significant others. Plaintiff has also submitted six declarations regarding four other dependency cases involving twelve other children which Wittman contends are "chilling examples of the policy, practice and/or procedure of DFCS violating parent's rights with the threat of harm to their

13

children inclusive of the use of intimidation and threats to take a parent's child/children away forever." *Id*. at 7; *see* Declarations of Kathy Bettencourt, Rick Gordon, Monique Herrera, Minerva Rocha, Mary Aguilar, and Tracy Jaquias.

The Court ordered supplemental briefing on whether the custom, as articulated by Wittman at the oral argument, constituted an unconstitutional custom under *Monell*. The Court also specifically directed defendant to address the evidence submitted by plaintiff in light of this new articulation of the *Monell* claim. Defendant's supplemental brief does not argue that the custom, as newly articulated by Wittman, would not constitute an unconstitutional custom under *Monell*. Instead, defendant's supplemental brief challenges the sufficiency of the evidence that plaintiff has submitted. Defendant contends that Wittman has failed to show that the County has an unconstitutional custom to deprive individuals of their right to freely associate, and that even if Wittman had demonstrated that the County violated parents' constitutional rights, Wittman has failed to show that any custom was widespread.

The Court concludes that Wittman has raised a triable issue of fact as to the existence of an unconstitutional custom to deprive individuals of their right to freely associate. The declarations submitted by Wittman all state that County social workers told parents that they could not associate with their significant others if the parents wished to retain or regain custody of their children. Defendant contends that these declarations are too general and conclusory to constitute significant, probative evidence of an unconstitutional custom. However, although Wittman's evidence may very well be insufficient to *prove* that the County has an unconstitutional custom, they are sufficient at the summary judgment phase to raise a triable issue fact as to whether such a custom exists. The declarations identify the social workers who allegedly informed the parents that they could not associate with their significant others, and they provide details regarding the substance of these communications as well as when these communications took place.[5]

The Court also rejects defendant's argument that Wittman has failed to establish that any

---

[5] With respect to the specific dependency cases, defendants also contend that the Superior Court had ample reasons to order removal of the children, and that in some cases any association between the parents and their significant others was limited due to the incarceration of the significant other. However, these arguments do not squarely address the question of whether the County has an unconstitutional custom of interfering in the rights of parents and significant others to associate and communicate with each other.

14

unconstitutional custom was widespread. Wittman has introduced evidence concerning a total of five families and sixteen children, and this is sufficient to raise a triable issue of fact to defeat summary judgment. The cases cited by defendant are distinguishable. *See Carter v. District of Columbia*, 795 F.2d 116 (D.C. Cir. 1986) (judgment entered for defendant after trial) *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) (same); *Samarco v. Neumann*, 44 F. Supp. 2d 1276 (S.D. Fla. 1999) (summary judgment entered for defendant where plaintiff only introduced evidence of his own experience).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court concludes that plaintiff may maintain an action for damages against the County under a *Monell* theory of liability, but that plaintiff lacks standing to pursue injunctive relief. The Court hereby GRANTS in part and DENIES in part defendant's motion for summary judgment [# 200], GRANTS defendant's requests for judicial notice [# 204, #217, #236], and DENIES plaintiff's motion for preliminary injunction as moot [# 189].

Dated: February 3, 2006

SUSAN ILLSTON
United States District Judge